UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAMAR A. WASHINGTON, | ) | CASE NO. 1:19-CV-02399 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Lamar A. Washington (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

I.     **Procedural History**

Plaintiff applied for SSI on August 4, 2015, alleging a disability onset date of July 11, 2015. (R. 12, Transcript (Tr.) 11). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 11). Plaintiff participated in the hearing on November 25, 2017, was represented by counsel, and testified. (Tr. 26-50). Plaintiff appealed the subsequent ALJ decision to federal court and the court remanded for further administrative proceedings, on November 19, 2018. (Tr. 833).

In the interim, on July 2, 2018, Plaintiff filed a new application for SSI. (Tr. 975-977). On March 8, 2019, the Appeals Council (AC), noting the federal court's remand, ordered the new application consolidated with the earlier claim and remanded the matter to the ALJ. (Tr. 850-51). The AC determined that the ALJ insufficiently evaluated the opinion of Dr. Kong Kwon, Plaintiff's treating physician. (Tr. 850). The AC instructed the ALJ to "[g]ive further consideration to [Plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific reference to evidence of record in support of assessed limitations," and to explain the weight given to such opinions. (Tr. 851). The AC further instructed that, if necessary, the ALJ should obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on the claimant's occupational base, and the assessment shall reflect that specific capacity/limitations established by the record as a whole. (Tr. 851).

The ALJ conducted a supplemental hearing on July 18, 2019, during which Plaintiff was represented by counsel and testified. (Tr. 781-95). A vocational expert also testified. *Id*. On August 7, 2019, the ALJ denied Plaintiff's claims. (Tr. 762-80).

The ALJ's decision became the Commissioner's final decision, on October 7,2019, sixty-one days thereafter. 20 C.F.R. § 404.984(a), (c), (d). Plaintiff filed a complaint challenging the Commissioner's final decision on October 15, 2019, (R. 1), and the parties have completed briefing. (R. 15, 16). Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions consistent with SSA regulations, policy and Sixth Circuit precedent. (R. 15, PageID # 1704).

## II.     Evidence
### A.      Relevant Medical Evidence[1]
#### 1.      Treatment Records

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions

2

On July 9, 2015, Plaintiff went to the emergency room reporting suicidal ideation. (Tr. 441). He reported that he had been depressed for several years and felt hopeless. *Id.* He reported hearing voices urging him to harm himself. *Id.* Plaintiff was medically boarded while waiting for psychiatric bed to become available. (Tr. 446). On July 11, 2015, he was admitted to Geriatric psychiatry on an involuntary basis for depression and suicidal behavior and ideation. (Tr. 432, 446). Plaintiff related his depression to head trauma at the age of 21. (Tr. 446). He experienced four different auditory hallucinations of unfamiliar voices telling him he was worthless and to harm himself. *Id.* He had nightmares of monsters trying to steal his soul and thought Satan was trying to possess him. *Id.* During his hospital stay, with treatment, Plaintiff became more social and his hallucinations and depression decreased significantly. (Tr. 446-47). The treatment team felt Plaintiff met the criteria for schizoaffective disorder. (Tr. 446-7). Plaintiff was discharged on July 22, 2015. (Tr. 447). At discharge, Plaintiff's mood was rated at 5 out of 10 for depression and his affect was appropriate at times. *Id.* He was referred to Dr. Kwon for a psychiatric follow-up. (Tr. 448).

On August 11, 2015, Plaintiff visited psychiatrist Dr. Kwon and reported a history of auditory hallucinations as well as incarceration for drug possession and domestic violence. (Tr. 529). Dr. Kwon completed an adult psychological evaluation, noting Plaintiff's history of auditory hallucinations, paranoid thoughts, and depression. *Id.* Plaintiff reported depressed mood, frequent anxiety attacks, racing thought with poor concentration, sleeping issues, irritability and anger management problems, chronic suicidal thoughts and auditory hallucinations and persecutory delusions. (Tr. 529). Plaintiff reported that due to poor concentration he had difficulty holding a job. *Id.* Dr. Kwon diagnosed schizoaffective disorder with depression, anxiety, auditory and

---

of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

persecutory delusions (Tr. 531). Dr. Kwon adjusted Plaintiff's medications. (Tr. 531-32).

On October 15, 2015, Plaintiff began therapy with Alexander D'Rain, LSW and reported ongoing auditory hallucinations and symptoms of anxiety due to those hallucinations telling him to hurt himself.  (Tr. 554). On October 26, 2015, Plaintiff followed up with Dr. Kwon. (Tr. 559). Plaintiff denied suicidal and paranoid thought but reported that he still heard voices and felt depressed. *Id.* Dr. Kwon adjusted Plaintiff's medications. *Id.*

In December, Plaintiff reported that he was doing well on his medications, but he still heard the voices at times. (Tr. 566). However, he could cope with the voices by listening to music and other distraction methods. *Id.*

On January 4, 2016, Plaintiff reported to Dr. Kwon that he was still experiencing auditory hallucination and depression. (Tr. 575). He also reported that he was doing better after his medication increase. *Id.* Plaintiff told his caseworker that his hallucinations had decreased, but he still sometimes heard murmuring. *Id.*

On March 7, 2016, Plaintiff reported to Dr. Kwon that his auditory hallucinations had diminished. (Tr. 661). Dr. Kwon adjusted Plaintiff's medications. *Id.* Plaintiff reported ongoing auditory and visual hallucinations to his caseworker. (Tr. 639). In May 2016, Plaintiff reported to Dr. Kwon that he had no new problems, but occasionally had upset stomach, auditory hallucinations, and paranoid thoughts. (Tr. 663). Plaintiff indicated that he was sad, depressed, and unmotivated. *Id.* Plaintiff denied suicidal thoughts and side effects from his medications. *Id.* Dr. Kwon prescribed additional medication. *Id.*

In August 2016, Plaintiff reported to Dr. Kwon that he was feeling better, but still hearing voices and seeing visions with paranoid thoughts and sleep problems. (Tr. 665). Dr. Kwon observed that Plaintiff was neither agitated nor distressed. *Id.* Plaintiff continued to have ongoing

auditory hallucinations through November 2016. (Tr. 647; 649; 651; 667). In February 2017, Plaintiff told Dr. Kwon that he was doing okay, but the hallucinations continued. (Tr. 669). Dr. Kwon noted that Plaintiff was pleasant, not agitated or in distress, and interacted appropriately. *Id.*

In June 2017, Plaintiff was informed that his counselor was leaving the agency and he was being placed with a new counselor. (Tr. 1263). He met with his new caseworker, Kelly King, LSW, on June 9, 2017, and reported that he was still hearing voices. (Tr. 1288). Plaintiff treated with Dr. Kwon in July 2017, and reported that he was still depressed, and the hallucinations persisted. (Tr. 1291). In October 2017, Dr. Kwon increased Plaintiff's medications. (Tr. 1294).

In April 2018, Plaintiff told Dr. Kwon that his mood had improved, and his psychotic symptoms were diminished. (Tr. 1303). Plaintiff reported occasional hallucinations and paranoid thoughts. *Id.*

In July 2018, Dr. Kwon noted that Plaintiff was compliant with his follow-up appointments and medications; and that with medications and supportive therapy, Plaintiff's "psychotic symptoms have diminished and his mood improved." (Tr. 1309). Dr. Kwon observed that Plaintiff was well oriented, not agitated or irritable, and interacted appropriately. (Tr. 1310-11). Plaintiff had fair attention and concentration; was depressed but not anxious; had constricted affect, linear thought processes with tight associations, fair functional knowledge, hallucinations and paranoid thoughts; presented with fair judgment and insight; and his memory was not impaired. (Tr. 1311).

In January 2019, Dr. Kwon noted that with medication Plaintiff's "mood remain[ed] stable and there are no active psychotic symptoms." (Tr. 1619). Dr. Kwon observed that Plaintiff was fully oriented, interacted appropriately, had fair attention and concentration, was depressed but not anxious, had constricted affect, and his speech was clear and coherent. (Tr. 1620). Plaintiff's

thought processes were linear, his associations were tight, his fund of knowledge was fair, he reported hallucinations and paranoid thoughts, his judgment and insight were fair, and his memory was not impaired. (Tr. 1620-21). Similarly, in April 2019, Dr. Kwon noted that Plaintiff's attention and concentration were "fairly sustained," his mood was "not as depressed or anxious," and his affect was "congruent." (Tr. 1627-28). Plaintiff's speech remained normal, his thought processes linear, and his memory unimpaired. *Id.* Notably, Dr. Kwon observed that Plaintiff had no hallucinations or delusions. (Tr. 1628).

### 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

State Agency medical consultants Cynthia Waggoner, Psy. D., and Juliette Savitscus, Ph.D., reviewed Plaintiff's treatment records. (Tr. 52-61, 63-72). In November 2015, Dr. Waggoner opined that Plaintiff's concentration and pace were variable, so he "[m]ay need some flexibility in terms of time limits and production standards." (Tr. 58). She explained that Plaintiff could "interact briefly and occasionally in situations that do not require more than superficial contact, resolving conflicts or persuading others to follow demands." (Tr. 59). She also explained that Plaintiff could "adapt to a setting in which duties are routine and predictable" and that changes should be well-explained and introduced slowly." *Id.* In February 2016, Dr. Savitscus agreed with Dr. Waggoner's opinion. (Tr. 69-70).

On January 4, 2016, Dr. Kwon completed a check box opinion Mental Impairment Questionnaire. (Tr. 610-11). He noted that he had been treating Plaintiff every two months for schizoaffective disorder. (Tr. 610). He prescribed Abilify, Depakote and Prozac. *Id.* The doctor indicated the clinical findings that demonstrate the severity of Plaintiff's impairments and symptoms include auditory hallucinations, impaired concentration and depression. *Id.* Dr. Kwon

opined Plaintiff prognosis is guarded. *Id.* The doctor indicated that Plaintiff's functioning was

limited, but with satisfactory performance in the areas of:

- Work in coordination with or in proximity to others without being distracted by them
- Interact appropriately with the general public
- Ask simple question or request assistance
- Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness

(Tr. 610-11).

Dr. Kwon indicated that Plaintiff was seriously limited but not precluded from functioning

in the following areas:

- Carry out very short and simple instructions
- Carry out detailed instructions
- Maintain attention and concentration for extended periods
- Perform activities within a schedule
- Manage regular attendance and be punctual within customary tolerances
- Sustain in ordinary routine without special supervision
- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Perform at a consistent pace without an unreasonable number and length of rest periods
- Remember locations and work-like procedures
- Understand and remember very short and simple instructions
- Understand and remember detailed instructions
- Accept instructions and respond appropriately to criticism from supervisors
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes
- Respond appropriately to changes in the work setting
- Be aware of normal hazards and take appropriate precautions
- Set realistic goals or make plans independently

Dr. Kwon opined that Plaintiff would miss three to five days of work per week and be off

task 50 percent of the time. (Tr. 611).

On March 21, 2017, Dr. Kwon completed a second Mental Impairment Questionnaire. (Tr.

671). He noted that he had been treating Plaintiff every three months for 20 to 30 minutes for

schizoaffective disorder. *Id.* He continued to prescribe Abilify, Depakote and Prozac, and added Seroquel since his last questionnaire. *Id.* Dr. Kwon indicated the clinical findings that demonstrate the severity of Plaintiff's impairments and symptoms include auditory and visual hallucinations and paranoid thoughts. *Id.* Dr. Kwon indicated that Plaintiff was seriously limited, but not precluded from functioning in the areas of:

- Sustain an ordinary routine without special supervision
- Remember locations and work-like procedures
- Understand and remember very short and simple instructions
- Ask simple questions or request assistance
- Respond appropriately to changes in the work setting
- Be aware of normal hazards and take appropriate precautions

(Tr. 671-72). In addition, Dr. Kwon assessed that Plaintiff was unable to meet competitive standards in the following areas:

- Carry out very short and simple instructions
- Carry out detailed instructions
- Maintain attention and concentration for extended periods
- Perform activities within a schedule
- Manage regular attendance and be punctual within customary tolerances
- Work in coordination with or in proximity to others without being distracted by them
- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Perform at a consistent pace without an unreasonable number and length of rest periods
- Understand and remember detailed instructions
- Interact appropriately with the general public
- Maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness
- Set realistic goals or make plans independently of others

(Tr. 671-72). Further, Dr. Kwon indicated that Plaintiff had no useful ability to function in the following:

- Accept instructions and respond appropriately to criticism from supervisors

8

- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 672). He opined that Plaintiff would miss three days of work per week and be off task 50 percent of the time. *Id.*

In August 2018, Dr. Waggoner again reviewed Plaintiff's records in reference to his subsequent SSI application, including his updated medical information. (Tr. 827-29). Dr. Waggoner updated her opinion to indicate that Plaintiff could perform routine, predictable, goal-oriented work, but could not work at a production rate pace. (Tr. 828). She opined that Plaintiff could occasionally interact with supervisors, coworkers, and the public if that interaction was limited to speaking and signaling. *Id.* Plaintiff could perform routine and predictable work in a setting where changes were well explained and introduced slowly. *Id.*

In December 2018, psychologist Jennifer Swain, Psy. D., reviewed Plaintiff's medical records from 2017 and 2018. (Tr. 836-46). Dr. Swain agreed with Dr. Waggoner's opinion. (Tr. 844).

Dr. Kwon submitted a third opinion in July 2019, stating that he affirmed his March 2017 opinion. (Tr. 1634).

**B.    Relevant Hearing Testimony**
    **1.    2017 Hearing**

At the November 25, 2017 hearing, Plaintiff testified as follows:

- He obtained a GED after leaving school in tenth grade due to issues with concentration and paranoia. (Tr. 32). His last job was in his 20s, at a fast-food restaurant. His employment ended due to attendance and paranoia issues. (Tr. 33). He expressed difficulty maintaining a relationship. *Id.*

- Plaintiff has been on medication since attempting self-harm in 2015, although the medication causes some stomach issues. (Tr. 35-36). Despite medication, he still gets depressed and experiences audio hallucinations. (Tr. 36). Before

medication, he heard voices at least three or four times a day, but it decreased to one to two times a day after he started the medication. *Id.* He still experiences suicidal ideation, but a family member calms him. *Id.* He tries to be around others, otherwise he hears voices and is scared to be alone. (Tr. 36).

- He listens to music to help alleviate audio hallucinations. (Tr. 37). He watches TV, but still has internal conversations. (Tr. 44). He has trouble falling asleep and is tired during the day. (Tr. 44).

- He was seeing a counselor at Connects Us, although he expected to be assigned a new counselor. (Tr. 36-37). He saw the counselor weekly and his psychiatrist monthly. (Tr. 37).

- He does not believe he can work eight hours a day, five days a week. (Tr. 38). He avoids people, experiences paranoia and creates excuses to leave. (Tr. 38-39). He does not believe he can complete a job application because he could not concentrate or focus. (Tr. 43).

At the 2017 hearing, a vocational expert (VE) listed Plaintiff's prior work as fast-food worker, 311.472-010, light, SVP 2; and labor salvage, 929.687-022, medium, SVP 2. (Tr. 47). The ALJ presented the following hypothetical question to the VE:

> I would like you to further assume that this individual can work at all exertional levels; can perform routine and predictable work in a setting where changes are well explained and introduced slowly; can perform goal oriented work, but cannot work at a production rate pace; and can briefly and occasionally interact with supervisors, coworkers and the public if that interaction is limited to speaking and signaling as it is defined in the SCO; can this person perform Mr. Washington's past work?

(Tr. 48). The VE testified that this hypothetical person could do the labor salvage position, but not the fast-food work. *Id.* The VE further stated that this hypothetical person could also perform the positions as a store laborer, an industrial cleaner, and a hospital cleaner. *Id.* The ALJ then asked the VE to consider the hypothetical with the added limitation that the person would be off task 20% of the time. *Id.* The VE testified that this person could not perform Plaintiff's past work or any other work in the economy. *Id.* The VE further testified that an individual that would be absent

two times a month on an ongoing basis could not perform Plaintiff's past work or any work in the

economy. (Tr. 49). In response to a question from Plaintiff's counsel, the VE testified that an

individual that "wasn't like other employees in the sense that they would need flexibility in terms

of time limits and production standards," would require a special accommodation, which would

lead to off task time. (Tr. 50-51).

### 2. The 2019 Hearing

At the July 18, 2019 hearing, Plaintiff testified as follows:

- He has not worked since the 2017 hearing. (Tr. 787). He explained that he is disabled because he cannot concentrate, focus or be around people due to audio hallucinations. *Id.*

- He sees a psychiatrist and takes medication, which reduces but does not eliminate the audio hallucinations. (Tr. 788). Music helps alleviate the voices he hears, but they still cause him paranoia. (Tr. 789). Medication has kept him from getting worse, since his 2017 hearing, and he expressed concern he could not function without it. (Tr. 790).

During the 2019 hearing, the ALJ posed the following hypothetical question to the VE:

In this hypothetical, I'd like you to assume a person of the Claimant's age, education and work history. In addition, the work does not require more than superficial interaction, meaning that it does not require negotiated with, instructing, persuading or directing the work of others? Could this person perform Mr. Washington's past work?

*Id.* The VE testified that this hypothetical person could perform Plaintiff's past work. (Tr. 790-

91). The VE further stated that this hypothetical person could also perform the positions as a

garment sorter, cleaner II, and classifier in the laundry and related fields. (Tr. 791). The ALJ then

asked the VE to consider the hypothetical with the added limitation that the person would be off

task 20% of the time. *Id.* The VE testified that this person could not perform Plaintiff's past work

or any other work in the economy. (Tr. 791-92). The VE further testified that an individual that

would be absent two times a month on an ongoing basis could not perform Plaintiff's past work or any work in the economy. (Tr. 792). In response to a question from Plaintiff's counsel, the VE testified that an individual that "required flexibility on an ongoing basis" in terms of time limits and production standards, would require a special accommodation. (Tr. 792-93). The VE verified that an individual that needed to work in an isolated environment would require an accommodation, and that he was unaware of any unskilled positions available providing an isolated work environment. (Tr. 793).

## III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing

substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.     Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since August 14, 2015, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: schizoaffective disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can tolerate a routine work setting with changes that [are] explained in advance; can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace, and the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others.

5. The claimant is capable of performing past relevant work as a salvage worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act,

since August 14, 2015, the date his first application was filed (20 CFR 416.920(f)).

(Tr. 767-773).

V.    **Law and Analysis**
    A.    **Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

    B.    **Plaintiff's Assignments of Error**

Plaintiff contends that the ALJ erred by failing to properly evaluate the medical opinions consistent with the regulations, Agency policy and Sixth Circuit precedent. Specifically, Plaintiff

asserts that the ALJ failed to explain why he did not include the limitations set forth in the 2015 and 2016 opinions of State Agency medical consultants in the residual functional capacity assessment (RFC), (R. 15, PageID# 1718), and failed to provide sufficient reasons for rejecting the limitations opined by Dr. Kwon (R. 15, PageID # 1722).

### 1. The ALJ's Mental Residual Functional Capacity Assessment

Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ did not include all the limitations assessed by the State Agency consultants, despite ostensibly assigning those opinions great weight. (R. 15, PageID# 1718). Specifically, Plaintiff contends that the ALJ failed to analyze the 2015 and 2016 State Agency opinions as evidenced by the fact that the ultimate RFC findings failed to include "critical limitations opined by both consultants." (R. 15, PageID# 1718). Plaintiff asserts that "it cannot be disputed that both of the physicians opined Plaintiff may need some flexibility in terms of time limits and production standards." (R. 15, PageID# 1718-19).

The Commissioner responds that the RFC not only included the limitations assessed by the State Agency consultants, it used *more restrictive* language than the opinions suggested. "Rather than find that Plaintiff could sometimes maintain production rate pace, and sometimes not, thus necessitating flexibility, the ALJ instead restricted Plaintiff to jobs that did not require production rate pace at all." (R. 16, PageID# 1744-45). Further, the Commissioner argues that in his 2019 decision, the ALJ referred to his 2017 decision, wherein he discussed these opinions. (R. 16, PageID# 1737, citing Tr. 770). Specifically, in his 2019 decision, the ALJ stated "[r]elevantly, the residual functional capacity I have found is the same that was found in the Decision I issued previously on September 12, 2017 (Ex. 5A). I see no reason to change or amend the residual

functional capacity. Importantly, as noted above, the claimant filed a subsequent Title XVI application on June 1, 2018. After reviewing the evidence of record, the state agency consultants also adopted the residual functional capacity of my first Decision (Ex. 10A)." (Tr. 770-771).

The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a).[2] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The ALJ's hypothetical questioning to a vocational expert during an administrative hearing must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217

---

[2] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, ***the claimant's RFC***, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x. 498, 505 (6th Cir. 2013) (internal citations omitted)).

Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010)) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011) (Gaughan, J).

Specifically, Plaintiff asserts that in their 2015 and 2016 opinions both State Agency psychologists Dr. Waggoner and Dr. Savitscus opined, "Concentration and pace variable. May need some flexibility in terms of time limits and production standards." (Tr. 58, 70). Plaintiff points to the VE's testimony, during the 2017 hearing, wherein he confirmed a special accommodation would be required if someone needed flexibility regarding time limits and production standards. (R. 15, PageID# 1719, citing Tr. 49). However, this was in response to Plaintiff's counsel's questioning. The ALJ's hypothetical to the VE asked him to consider an individual that, among other limitations, "cannot work at a production rate pace." (Tr. 48). The VE testified that such an individual could perform Plaintiff's past work in labor and salvage, but not fast-food worker. (Tr. 48). He could also perform the tasks of laborer, industrial cleaner, and hospital cleaner. (Tr. 48). Such a limitation does not require an accommodation.

The ALJ concluded that Plaintiff had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Can tolerate a routine work setting with changes that are explained in advance; can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a

production rate pace, and the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others." (Tr. 770).

Plaintiff further asserts that the ALJ's ultimate RFC finding did not incorporate the limitations set by Dr. Waggoner and Dr. Savitscus despite assigning great weight to their opinions, as noted in the 2017 decision and referenced in the 2019 decision. (R. 15, PageID# 1718, citing Tr. 17; see also, Tr. 770). An ALJ is not required to discuss every piece of evidence in the record to support his decision, but she must explain why she ***did not*** include the limitations from an opinion of a medical source in her determination of the claimant's RFC. *See, e.g., Moscorelli v. Colvin*, No. 1:15CV1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016) (*citing Thacker v. Commissioner*, 99 Fed. Appx. 661, 665 (6th Cir. 2004); *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011)). SSR 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Moscorelli*, 2016 WL 4486851, at *3 (quoting SSR 96-8p, 1996 WL 374184, at *7); *see also Stubbs v. Berryhill*, No. 1:17CV2498, 2018 WL 5255140, at *14 (N.D. Ohio Oct. 22, 2018) (same).

The court concludes that the ALJ's RFC ***did*** include the limitations suggested by Dr. Waggoner and Dr. Savitscus. The RFC limiting Plaintiff to tasks "not at a production rate pace" encompasses and extends beyond the limitations suggested by Dr. Waggoner and Dr. Savitscus that Plaintiff would need flexibility with time and production standards. Plaintiff does not offer any argument explaining why the RFC, limiting Plaintiff to tasks "not at a production rate pace," does not adequately account for the State Agency opinions.

Accordingly, Plaintiff's assignment of error regarding the ALJ's RFC assessment is

overruled.

### 2. Dr. Kwon's Opinion

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting the limitations opined by Dr. Kwon, Plaintiff's treating physician. (R. 15, PageID# 1722). Plaintiff contends that the ALJ violated the treating physician rule with respect to the weight assigned to the opinion from Dr. Kwon. (R. 15, PageID# 1722). The Commissioner argues that the evidence supports the ALJ's assessment of the doctor's opinion. (R. 16, PageID# 1741).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if [the ALJ] finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Unless a treating source's opinion is given controlling weight, the ALJ is required to consider the following factors in deciding the weight to give any medical opinion: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(c); *see generally Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). While the ALJ is directed to consider such factors, the ALJ is not required to provide an

"exhaustive factor-by-factor analysis" in her decision. *See Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).

If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give good reasons for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). If fully explained with appropriate citations to the record, a good reason for discounting a treating physician's opinion is a finding that it is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (citing *Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

When considering an opinion's supportability, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. § 404.1527(c)(3). Regarding consistency, the regulations state "the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

The ALJ's underlying 2019 decision addressed Dr. Kwon's medical source statement as

follows:

> At this juncture, it is prudent to discuss the medical source opinions of Dr. Kwon, as he expressed them at Exhibits 8F, 11F, and 21F. At Exhibit 8F, dated January 4, 2016, he checked the boxes indicting the claimant was seriously limited but not precluded from various activities or domains. He concluded, however, that the claimant would miss 3-5 days of work per week and would be off task 50% of the workday. At Exhibit 11F, dated March 21, 2017, he checked a majority of boxes indicating the claimant would be unable to meet competitive standards and again that the claimant would be off task 50% of the time and miss 3-5 days per week of work. Finally, at Exhibit 21F, dated July 2, 2019, Dr. Kwon reaffirmed his opinions offered on March 21, 2017. He did not address the opinions he offered on January [4], 2016.
>
> I give the opinions of Dr. Kwon little weight. They are contradicted by the reports cited earlier indicating the claimant is stable on medications and that the claimant has no active psychosis (Ex. 20F pages 1 and 12). As late as April 2019, Dr. Kwon reported the claimant's MSE results as:
>
> "Oriented x4
> Properly dressed and groomed
> Not agitated or in distress
> Normal gait and station
> Attention/Concentration-fairly sustained
> Clear, coherent, and goal directed
> Linear thought processes
> No hallucinations or delusions
> Memory-not impaired" (Ex. 20F page 9).
>
> There are no medical data or test results indicating the claimant would miss 3-5 days per week or would be off task 50% of the time.

(Tr. 771).

Here, the ALJ's decision acknowledged that Dr. Kwon was a treating provider and

discussed the doctor's lengthy history with Plaintiff. (Tr. 768). But the ALJ concluded that the

doctor's treatment notes did not support a conclusion that "claimant would miss 3-5 days per week

or would be off task 50% of the time." (Tr. 771). As an example, the ALJ cited to Dr. Kwon's

January 22, 2019 treatment notes regarding a session with Plaintiff wherein Dr. Kwon noted that

"[w]ith the medications his mood remains stable and there are no active psychotic symptoms." (Tr. 1619). Dr. Kwon further noted "with the current medications his psychotic symptoms have diminished and his mood improved significantly and he is not experiencing any significant side effect and they will be renewed." (Tr. 1623). The ALJ also relied upon Dr. Kwon's treatment notes from July 24, 2018 and April 9, 2019, wherein he acknowledged that "with the medications [Plaintiff's] mood remains stable and there are no active psychotic symptoms." (Tr. 768-69, citing Tr. 1309, 1630). In other words, the ALJ found that Dr. Kwon's opinion lacked supportability.

In addition, the ALJ noted that the level of limitations was not consistent with the overall record. (Tr. 770-771). The ALJ notes that the RFC, which did not include Dr. Kwon's extreme limitations of 3-5 days off per week and 50% of task time, was consistent with the State Agency consultants' opinions. (Tr. 771). Specifically, the ALJ points to Dr. Swain's December 14, 2018 disability determination, noting that after reviewing the evidence of record[3,] he adopted the RFC from the ALJ's 2017 decision. (Tr. 771, citing Tr. 846). Before rendering these conclusions, the ALJ's decision provided an extensive discussion of Plaintiff's treatment with Dr. Kwon. In

---

[3] Plaintiff argues that "it is not clear at all that these examiners had access to all of the relevant evidence, including any of the records from 2015 through 2017 or any in 2019; no mention is made of critical aspects of the record, including any of Dr. Kwon's opinions." (R. 15, PageID# 1727). Plaintiff contends that before denying this claim, the ALJ was required to have a "legitimate medical basis for doing so" and therefore should have "arranged for consultative examination, re-contacted Dr. Kwon for more specific assessment of the degree of limitations, sent the entire (updated and complete) file back to the State Agency for review by a psychological consultant, or obtained a review of the entire record and testimony from a medical expert."(R. 15, PageID# 1728). Such an argument misplaces the burden of proof in disability claims. "Disability benefit claims are assessed using an established five-step analysis. As an initial matter, we note that the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that she cannot perform her past relevant work. The burden of proof shifts to the Commissioner only if the fifth step, proving that there is work available in the economy that the claimant can perform, is reached." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Walters v. Comm. of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997).

particular, the ALJ provided as follows:

> The record shows a psychiatric hospitalization, following threats of suicide, in July 2015 (Ex. 3F page 6 and Ex. 7F). There have been no subsequent psychiatric hospitalizations. The claimant alleges he hears voices and that he is depressed. As noted, his treating psychiatrist is Dr. Kong Young Kwon. On July 24, 2018, Dr. Kwon reported the following:

> "A follow up visit for this 36-year-old male with schizoaffective disorder. He is compliant with his follow ups and medications. With the medications and supportive therapy his psychotic symptoms have diminished and his mood improved. During the session he was not agitated or in distress and interacted appropriately with good eye contact. Speech was clear and coherent and goal directed. He still endorses occasional auditory and visual hallucination and paranoid thoughts. But denied having suicidal or homicidal thought. He is not experiencing any significant side effect" (Ex. 16F page 47).

> On January 22, 2019, Dr. Kwan reported the following:

> "A follow up visit for this 36-year-old male with schizoaffective disorder. With the medications his mood remains stable and there are no active psychotic symptoms. During the session he was properly dressed and groomed, not agitated and angry, but somewhat brooding, speech was clear and coherent but raised and harsh, mood was described to be not as depressed, anxious or angry and affect was congruent, he still endorsed occasional auditory and visual hallucination and paranoid thoughts, but denied having suicidal or homicidal thought. He appears to be experiencing GI side effect from Depakote" (Ex. 20F page 1).

> On April 9, 2019, Dr. Kwon reported:

> "A follow up visit for this 37-year-old male with schizoaffective disorder. With the medications his mood remains stable and there are no active psychotic symptoms During the session he was properly dressed and groomed, not agitated and angry, but somewhat brooding, speech was clear and coherent but raised and harsh, mood was described to be not as depressed, anxious or angry and affect was congruent, he still endorsed occasional auditory and visual hallucination and paranoid thoughts, but denied having suicidal or homicidal thought" (Ex. 20F page 12).

> On April 9, 2019, Dr. Kwon reported the following results of the claimant's mental status exam (MSE):

> "Oriented x4
> Properly dressed and groomed
> Not agitated or in distress
> Normal gait and station

Attention/Concentration-fairly sustained
Clear, coherent, and goal directed
Linear thought processes
No hallucinations or delusions
Memory-not impaired" (Ex. 20F page 9).

At the July 18, 2019 hearing, the claimant testified he now lives with his uncle. He
testified he cleans, mows the lawn, does dishes, vacuums, takes out the trash and
listens to music. At Exhibit 10E, his friend added that the claimant exercises and is
able to take public transportation.

Based upon the evidence and testimony, I find that in understanding, remembering
or applying information, the claimant has a mild limitation. As Dr. Kwon noted,
the claimant is linear, coherent, goal oriented, and has no memory impairment (Ex.
20F). In interacting with others, the claimant has a moderate limitation. The
claimant testified he avoids others due to his suspiciousness of them. With regard
to concentrating, persisting or maintaining pace, the claimant has a moderate
limitation. He is depressed and he testified he heard voices, which he claimed
interfered with his activities. As for adapting or managing oneself, the claimant has
experienced a moderate limitation. The claimant had the one psychiatric
hospitalization in July 2015, but none since.

(Tr. 768-69).

Having considered the parties' arguments and governing law, the court finds that the ALJ's

discussion satisfied the treating physician rule. *See generally Crum v. Commissioner*, No. 15-3244,

2016 WL 4578357, at *7 (6th Cir. Sept. 2, 2016) (suffices that ALJ listed inconsistent treatment

records elsewhere in the opinion); *Hernandez v. Commissioner*, No. 15-1875, 2016 WL 1055828,

at *4 (6th Cir. Mar. 17, 2016).

Plaintiff's assignment of error, therefore, is without merit.

**VI.     Conclusion**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 29, 2021